IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**BYRD HAMMER and**
**MELINDA HAMMER,**

      **Plaintiffs,**

  v.                                                       **CIVIL NO. 2:21-CV-25**
                                                                      **(KLEEH)**

**STATE FARM FIRE AND CASUALTY**
**COMPANY, WILLIAM H. BURKETT,**
**PHILIP J. HATFIELD, JON HATCH,**
**JANE OR JOHN DOES 1-3, and**
**JANE OR JOHN DOES 4-10,**

      **Defendants.**

**MEMORANDUM OPINION AND ORDER GRANTING**
**MOTION TO REMAND [ECF NO. 6]**

Pending before the Court is a motion to remand filed by the Plaintiffs, Byrd Hammer and Melinda Hammer (together, "Plaintiffs"). For the reasons discussed herein, the Court **GRANTS** the motion.

**I.    BACKGROUND AND PROCEDURAL HISTORY**

This action involves claims of breach of contract, common law first-party bad faith, and violations of the West Virginia Unfair Trade Practices Act ("UTPA"). Defendant Philip J. Hatfield ("Hatfield") removed the case to this Court from the Circuit Court of Pendleton County on December 9, 2021. Plaintiffs filed a motion to remand on January 6, 2022. The issue with respect to the motion to remand is whether Hatfield was fraudulently joined to defeat

diversity jurisdiction. The motion to remand is fully briefed and ripe for review. The Court heard arguments on the motion on April 25, 2022.

## II.   GOVERNING LAW

"The doctrine of fraudulent joinder permits a federal court to 'disregard, for jurisdictional purposes, the citizenship of certain nondiverse defendants, assume jurisdiction over a case, dismiss the nondiverse defendants, and thereby retain jurisdiction.'" Boss v. Nissan N. Am., Inc., 228 F. App'x 331, 334-35 (4th Cir. 2007) (citation omitted). To establish fraudulent joinder, the removing defendant "must show that 'there is no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant,'" which means that courts must decide whether there is a "reasonable basis for predicting that state law might impose liability on the facts involved[.]" Id. at 335 (citations omitted).

"[T]his standard is even more favorable to the plaintiff than the standard for ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6)." Johnson v. Am. Towers, LLC, 781 F.3d 693, 704 (4th Cir. 2015) (citation omitted). It requires a showing not of ultimate success on the merits of the claim, but only of a "possibility of a right to relief" against the non-diverse defendant. Id. (citation omitted). "Once the court identifies

**MEMORANDUM OPINION AND ORDER**
**GRANTING MOTION TO REMAND [ECF NO. 6]**

this glimmer of hope for the plaintiff, the jurisdictional inquiry ends." Hartley v. CSX Transp., Inc., 187 F.3d 422, 425-26 (4th Cir. 1999) (noting that the court "cannot predict with certainty how a state court and state jury would resolve the legal issues and weigh the factual evidence" but that "ultimate success is not required to defeat removal").  "[F]raudulent joinder is typically only found in cases of legal impossibility[.]" Flores v. Ethicon, Inc., 563 F. App'x 266, 269 (4th Cir. 2014).  "In deciding whether the plaintiff has any chance of recovery against the defendant, the court is not bound by the allegations of the pleadings, but may instead consider the entire record." Boss, 228 F. App'x at *3 (quotation marks and citations omitted).

West Virginia is a notice pleading state, requiring only "a succinct complaint containing a plain statement of the nature of the claim together with a demand for judgment." Syl. Pt. 2, Barker v. Traders Bank, 166 S.E.2d 331 (W. Va. 1969).  Rule 8 of the West Virginia Rules of Civil Procedure "eschews technical, hyper-specific pleading and only requires a pleader to provide notice by way of a 'short and plain statement of the claim' that is 'simple, concise and direct.'" Mountaineer Fire & Rescue Equip., LLC v. City Nat'l Bank of W. Va., 854 S.E.2d 870, 886 (W. Va. 2020).

### III. THE COMPLAINT

Plaintiffs, who are West Virginia residents, assert the

**MEMORANDUM OPINION AND ORDER**
**GRANTING MOTION TO REMAND [ECF NO. 6]**

following facts in their Complaint. See Compl., ECF No. 1-1, at ¶ 1. Defendant State Farm Fire & Casualty Company ("State Farm") is a citizen of Illinois. Id. ¶ 2. Defendant William H. Burkett ("Burkett"), a Maryland resident, was a State Farm claims adjuster assigned to handle Plaintiffs' fire loss claim. Id. ¶ 3. Defendant Phillip J. Hatfield ("Hatfield"), a West Virginia resident, was the State Farm investigator assigned to investigate Plaintiffs' claims. Id. ¶ 4. Defendant Jon Hatch ("Hatch"), whose residence is unknown, was the State Farm fraud team manager responsible for managing State Farm's fraud investigation of Plaintiffs. Id. ¶ 5. Defendants Jane and/or John Does 1-3 are the unidentified supervisors responsible for overseeing Burkett, Hatfield, and Hatch. Id. ¶ 6. Defendants Jane and/or John Does 4-10 are the unidentified State Farm management personnel responsible for State Farm's bad faith policies and practices in West Virginia. Id. ¶ 7.

Plaintiffs purchased a homeowner's policy for their home in Franklin, West Virginia, which is applicable to the claims at issue. Id. ¶ 10. Plaintiffs have paid premiums of $411,699 in dwelling coverage, $308,774 in personal property coverage, and $123,510 in Additional Living Expense coverage. Id. ¶ 12. On March 13, 2021, Plaintiffs' home was consumed by fire, and much of the home and its contents were destroyed. Id. ¶ 15. State Farm

was notified of the loss and assigned Burkett to investigate and adjust all aspects of Plaintiffs' claims. Id. ¶ 16.

Burkett arrived at the home to prepare a repair estimate on March 17, 2021. Id. ¶ 17. Burkett could see that in addition to fire and smoke damage, there was extensive water damage. Id. ¶ 18. While at the home, Burkett did not assess the fire, smoke, and water damage to Plaintiffs' personal property. Id. ¶ 19. He did not arrange for a fire/water mitigation vendor to help Plaintiffs with their personal contents claim. Id. ¶ 20.

On their own, Plaintiffs found ServPro, a water and fire mitigation company, to help them mitigate the damage in their home. Id. ¶ 22. Burkett agreed to pay ServPro to remediate water and mold damage to the home, but he did not authorize ServPro to assist with the personal contents claim. Id. ¶ 23. On March 26, 2021, Plaintiffs obtained a repair estimate of $356,599 for their home from DWL Construction, and Plaintiffs submitted the estimate to State Farm in the hopes that Plaintiffs could soon begin repairs. Id. ¶ 24. State Farm did not dispute the estimate or request clarification, but on May 6, 2021, Burkett sent Plaintiffs his repair estimate of $118,645.25. Id. ¶¶ 25, 26. State Farm's estimate contained the following language:

> The estimate is priced based on estimated market pricing at the time of the loss. Adjustments in market pricing and timing of

> repairs may impact the final cost of covered repairs. Should you or the contractor you select have questions concerning our estimate, contact your claims representative. If your contractor's estimate is higher than ours, you should contact your claim representative prior to beginning repairs. State Farm will work with you and your contractor to determine the actual and necessary cost of covered repairs at the time repairs will be completed, subject to policy limits.

Id. ¶ 27. Burkett never contacted Plaintiffs' contractor to try to negotiate. Id. ¶ 28. On May 14, 2021, Burkett sent Plaintiffs and their mortgage company a settlement check for $137,622.97 even though the parties had not agreed on the cost of repairs. Id. ¶ 29. Burkett did not reconsider his estimate. Id. ¶ 30. Upon information and belief, Burkett closed dwelling coverage after issuing the check even though he knew that Plaintiffs disputed his valuation. Id. ¶ 31.

Plaintiffs could not start repairs because they could not find a licensed bonded contractor who would agree to restore their home for only $137,622.97. Id. ¶ 32. Burkett could not find one either. Id. ¶ 33. Burkett sent Plaintiffs an email requiring them to set up an online account to document their personal property losses, but Plaintiffs advised that they were not computer savvy and needed help with their claim. Id. ¶ 34. Plaintiffs attempted to mitigate the smoke damage by washing and cleaning many personal items, but the soot smell remained. Id. ¶ 35. Many

MEMORANDUM OPINION AND ORDER
GRANTING MOTION TO REMAND [ECF NO. 6]

of Plaintiffs' personal items that were soaked with water soon became infested with mold and discarded. Id. ¶¶ 36-37.

On June 3, 2021, Burkett sent Plaintiffs an email, asking them for a list of personal property that could not be cleaned or repaired. Id. ¶ 38. This was difficult for Plaintiffs because they needed help sending their list via email. Id. ¶ 39. In early July 2021, an employee at DWL Construction forwarded Plaintiffs' personal contents list to Burkett. Id. ¶ 40. On July 8, 2021, Burkett advised Plaintiffs that ServPro should come back to assess what personal contents should be cleaned and saved. Id. ¶ 41. Even after July 8, 2021, Burkett did not authorize ServPro to help with the personal contents claim. Id. ¶ 43. On July 22, 2021, Plaintiffs sent State Farm a second repair estimate of $329,474.00 from Laurel Hill Construction Company. Id. ¶ 44. Burkett did not re-open Plaintiffs' dwelling coverage, never acknowledged receiving the second estimation, never considered the second estimate, never obtained a repair estimate from a licensed bonded contractor to verify whether State Farm's estimate was too low, and never tried to find a licensed bonded contractor willing to restore for the amount of State Farm's estimate. Id. ¶¶ 47-51.

Instead, Burkett sent Plaintiffs a document entitled "Explanation of Building Replacement Cost Benefits Page," without explanation. Id. ¶ 52. Burkett soon advised Plaintiffs that their

**MEMORANDUM OPINION AND ORDER**
**GRANTING MOTION TO REMAND [ECF NO. 6]**

Additional Living Expense ("ALE") coverage would end in December 2021, despite Plaintiffs' home still being uninhabitable. Id. ¶ 54. Burkett referred Plaintiffs' personal contents claim to State Farm's fraud unit. Id. ¶ 55. Hatfield advised Plaintiffs that he would be "assisting in the handling of" the personal contents claim. Id. ¶ 56. Hatch advised Plaintiffs that State Farm was investigating them for insurance fraud. Id. ¶ 57.

Based on these facts, Plaintiffs assert the following:

(I)  Breach of Contract and Common Law First-Party Bad Faith; and

(II) Violations of the UTPA.

## IV.  DISCUSSION

Hatfield is the defendant who is allegedly fraudulently jointed. The only claim asserted against Hatfield is the UTPA claim. Plaintiffs assert that he (and all defendants) committed multiple violations of the UTPA and its regulations. Specifically with respect to Hatfield, Plaintiffs state, "On October 6, 2021, Defendant Phillip J. Hatfield of State Farm's fraud unit wrote the Plaintiffs to advise that he would be 'assisting in the handling of' their personal contents claim." Compl., ECF No. 1-1, at ¶ 56. Plaintiffs also assert, "State Farm has now assigned its fraud investigator Defendant Hatfield, and fraud Team Manager Hatch, to

the Plaintiffs' personal claim in order to void their coverage." Id. ¶ 66.

The UTPA, in W. Va. Code § 33-11-4, sets forth a list of "unfair methods of competition and unfair or deceptive acts or practices in the businesses of insurance[.]" The Supreme Court of Appeals of West Virginia has recognized that claims personnel may be held personally liable for violations of the West Virginia UTPA. See Syl. Pt. 1, Taylor v. Nationwide Mut. Ins. Co., 589 S.E.2d 55 (W. Va. 2003) ("A cause of action exists in West Virginia to hold a claims adjuster employed by an insurance company personally liable for violations of the West Virginia Unfair Trade Practices Act[.]").

Hatfield relies heavily on Banks v. Nationwide, No. 2:18-cv-00259, 2018 WL 3420811 (S.D.W. Va. July 13, 2018) (Johnston, J.), a case in the Southern District of West Virginia in which the court found that fraudulent joinder existed. In that case, the court intertwined the fraudulent joinder analysis with the 12(b)(6) analysis. It appears that the court incorrectly applied the Iqbal/Twombly pleading standard to the joinder question. The court later allowed Plaintiffs to amend their complaint, adding more substantive allegations against the adjusters, and then remanded. The Court finds the case to be unreliable in its analysis.

**MEMORANDUM OPINION AND ORDER**
**GRANTING MOTION TO REMAND [ECF NO. 6]**

In other cases, district courts in West Virginia have applied Taylor as follows:

> [J]ust as the West Virginia Supreme Court of Appeals held that a cause of action exists to hold a claims adjuster employed by an insurance company personally liable under the UTPA, Ms. Barker, in her individual capacity as claims supervisor, may also be liable under the UTPA. As a result, the plaintiff has demonstrated that there is a possibility, a glimmer of hope, in his allegation that both defendants violated the UTPA and this demonstration is enough to end this jurisdictional inquiry and remand this suit to the West Virginia court. Because the jurisdictional inquiry can end on this possibility alone, the plaintiff's remaining causes of action need not be addressed.

Meade v. Erie Ins. Prop. & Cas. Co., No. 5:09CV89, 2009 WL 3161430, at *2-3 (N.D.W. Va. Sept. 28, 2009) (Stamp, J.).  The same court later came to the same conclusion in a different case:

> This Court finds that the holding in Taylor is logically extended to Poynter and Steen, as they are adjusters involved in the business of insurance. Accordingly, because the plaintiff has stated a valid cause of action against the adjuster defendants, this Court must remand because, as this Court discusses below, whether the statute of limitations has run is a question of fact.

Lee v. Allstate Ins. Co., No. 5:10CV41, 2010 WL 4806886, at *3 (N.D.W. Va. Nov. 18, 2010) (Stamp, J.).  Numerous other federal judges in West Virginia have held that UTPA claims against insurance agents are sufficient "to escape the fraudulent joinder

rule[.]" See Lawson v. Am. Gen. Assur. Co., 455 F. Supp. 2d 526, 530 (S.D.W. Va. Sept. 12, 2006) (collecting cases).

In addition, one district judge determined that the mere possibility that the Supreme Court of Appeals of West Virginia would apply the Taylor rule to an agent of the defendant insurer — who was not an employee of any of the defendant insurers — would be sufficient reason to that fraudulent joinder did not exist:

> Here, VeriClaim acted as an agent for defendants and was not an employee of any of the defendant insurers. However, there appears to be little reason to doubt that, in a proper case, the West Virginia court would extend the rule of the Taylor case to an adjuster who is an independent contractor or agent. The possibility that the rule of the Taylor case would be so extended is all PinnOak needs to escape the fraudulent joinder rule if West Virginia law applies.

Pinnoak Res., LLC v. Certain Underwriters at Lloyd's, London, 394 F. Supp. 2d 821, 825 (S.D.W. Va. 2005) (Faber, J.). Further, "the employment of a single, particular forbidden practice in the handling of several claims can define a general business practice[.]" Dodrill v. Nationwide Mut. Ins. Co., 491 S.E.2d 1, 13 (W. Va. 1996).

Given the notice pleading standard in West Virginia, the holding in Taylor, and the holdings of district courts that have applied it, Defendants have not established that there is "no

possibility" of relief against Hatfield under West Virginia law. Plaintiffs have a "glimmer of hope" of relief against him. See Hartley, 187 F.3d at 425-26. Hatfield interacted with Plaintiffs on behalf of State Farm, and it is possible that he made misrepresentations to them under W. Va. Code § 33-11-4. The Court makes no prediction as to Plaintiffs' ultimate success on the merits. Because it is possible that Plaintiffs could recover against Hatfield, the Court finds that fraudulent joinder does not exist. Because Plaintiffs and Hatfield are both residents of West Virginia, diversity jurisdiction does not exist.

## V.    CONCLUSION

For the reasons discussed above, the Court **GRANTS** the motion to remand [ECF No. 6]. The Court disagrees with Plaintiffs' argument that Defendants' basis for removal was objectively unreasonable and, therefore, **DENIES** Plaintiffs' request for an award of fees and costs. All other pending motions [ECF Nos. 3, 23, 27] are hereby **TERMINATED.**

It is so **ORDERED.**

The Clerk is directed to transmit copies of this Memorandum Opinion and Order to counsel of record and the Clerk of the Circuit Court of Pendleton County, West Virginia.

DATED: June 6, 2022

**MEMORANDUM OPINION AND ORDER**
**GRANTING MOTION TO REMAND [ECF NO. 6]**

*Tom S Kleeh*
―――――――――――――――――――――
THOMAS S. KLEEH, CHIEF JUDGE
NORTHERN DISTRICT OF WEST VIRGINIA